The next case this morning is 412-0331 Watsana Community School et al. v. WRB Refining. For the appellant, it's Thomas Wilson. You are he, sir? Yes, sir. And Beth Bauer. There she is. Will you both be arguing? No, I won't be arguing. Okay. And for the appellee, Mr. Craven? Good morning. Yes. Okay. Mr. Wilson, you may proceed. Thank you. Good morning. May it please the Court? Counsel. Counsel. The preliminary injunction order that was entered in this case by the Circuit Court is erroneous, and we're asking that it be reversed. And the point is very simple. The preliminary injunction order entered pursuant to Section 3 of the Open Meetings Act does not compel compliance with the Open Meetings Act. And it restrains the executive branch, specifically the Pollution Control Board in this case, from considering matters which they're statutorily required to consider for my client, WRB Refining, and only my client, even if they follow the Open Meetings Act. I'm going to come back to those two points briefly. Well, doesn't the order simply say comply with the Open Meetings Act? No, it does not, Your Honor. Your Honor, the order says that there is to be no further consideration. Let me make sure I quote it correctly. The Court said, I'm also concerned about future harm, and the only way to do that is to put a freeze on this, to stop this process from moving forward. I believe the Court has the authority under Section 3 of the Open Meetings Act granting an injunction against future violations of the Act. And the only way to do that is to say there are to be no more meetings concerning these plaintiffs and these defendants until we get a resolution after a full hearing on the merits of this case in the very near future. That was the Court's comments at the conclusion of the hearing. In the documentary the Court then entered, the Court stated, Court grants preliminary injunction by statute, citing Section 3, against the defendants for future violations of the Act. Ruling applies only to named plaintiffs and named defendants. So if the Pollution Control Board wanted to do everything that the plaintiffs in this case claim they should do to comply with the Open Meetings Act, they still cannot hear under this order my client and only my client's pending applications for certification of pollution control facilities. Well, your objection then seems to be primarily just on scope. What if the injunction said, hey, don't violate the Open Meetings Act anymore in any case you hear? Next case, how would that be? That would be at least within the scope of the authority granted to the Court. What would be the matter with that? There would be nothing the matter with that. So why don't we just all go home and have that as the order? Because that's not the order. The order, Your Honor, is the Pollution Control Board cannot hear applications for property tax certification from my client and only my client. They can continue to hear. How about if we fix that, make it for everybody? Would that make everyone happy? The Pollution Control Board already complies, we believe, with the Open Meetings Act. Well, apparently the trial judge in this case thought they didn't, and I suspect Mr. Craven is of that same view. You know, this is kind of a strange injunction, isn't it? Essentially it says, here's this statute which says how you're supposed to govern yourselves. And you know that statute? Comply with it. What's the problem with that? There would not be a problem with that, but that's not what the trial court did, Your Honor. Well, what if that's what we – kind of the joke of this court is we are sometimes in the position of saying, what the Supreme Court of Illinois meant to say, comma, and then out it comes. But this maybe is one of those instances where we should say, what the Sabin County Circuit Court meant to say, comma, was to the Pollution Control Board, just don't be violating any more of the Open Meetings Act, whoever the litigants happen to be in the next case. That won't be the problem. There would not be a problem with that, because that's exactly what – So I would be happy? You'd be happy with that kind of a – If the order were that the Pollution Control Board can hear the applications which we have, which are pending, so long as they comply with the Open Meetings Act, which they're required to do anyways, and which we believe they are doing, then they'd only be doing what the law requires them to do. But you're not doing it. You believe they're complying. We do. That doesn't matter for the merits below, but we do believe they're complying. But the court doesn't believe you're complying. But the court believed there was a question as to whether they were complying. So why isn't the court doing the right thing by putting a halt to it while this question is determined? Because what the court did in this case was went beyond the scope of the authority granted under Section 3 of the Open Meetings Act to tell them to comply. What the court said is, don't have any meetings concerning this one party's applications. Even if the Pollution Control Board were to comply to the letter and do everything that the plaintiffs claimed they were required to do, every single thing the plaintiffs claimed they were required to do, they can't hear our applications. But you don't want them to do everything that they're required to do. Yes, we do want them to do what they're required to do, considering our applications. You don't want them to do everything they're required to do, in your opinion? No. Everything they're required to do under the Open Meetings Act. And you take a different view than the other side? As to what the Open Meetings Act requires, yes, Your Honor. So again, when you have this dispute, what's wrong with a preliminary injunction putting things on hold while the dispute is resolved? What is wrong, Your Honor, is what the court is doing is telling another branch of government, the executive branch in this case, you cannot carry out your statutorily mandated functions, even if you follow the law. Even if you do what the Open Meetings Act requires you to do. You can't hear this one party's, this party's, and only this party's applications for Pollution Control Facility Certification. You can continue doing everything else that the plaintiffs in this case claim they're doing wrong. You can continue having improper agendas, which is one of their claims. You can continue having closed deliberative sessions. You can continue to not allow people to stand up in meetings and make verbal comments to the Pollution Control Board. You can do all that and everybody else. As Justice Steigman said, why don't we solve that by making the order apply to everybody? To follow the Open Meetings Act and consider everybody's business. That's exactly what they're required to do under the Open Meetings Act. There would be nothing wrong with that order, Your Honor. What if we just took the existing order and applied it to everybody? Put the freeze on until the matter is resolved? That would be erroneous, Your Honor, because under the Lindsay case, what the court would be doing is telling the coequal branch of government, you cannot carry out your statutory functions, even if you follow the Act. You keep throwing it, even if you follow the Act. But there's a dispute as to what the Act requires. That dispute has to be resolved sometime, somehow. Yes. And the question is, what happens between now and the time it's resolved? And you say, we just get to keep going. The court could tell the Pollution Control Board, these are the issues that I believe where there's a fair question as to whether or not you're following the Open Meetings Act. You must do the following things in conducting your meetings to make sure you're in compliance. The court cannot tell the Pollution Control Board, you can't hear anything until this case is resolved. We argued the merits of this case over 100 days ago in the Strategic County Circuit Court, and we still don't have a decision. And none of our applications have been considered, and that's causing extreme prejudice to my client and only my client, because their business and only their business has been put on hold. Do you have an argument that the Pollution Control Board is allowed to conduct meetings, closed meetings? Absolutely, Your Honor. And what's that argument? The matters that were raised on the merits below it, Your Honor, and I would submit they're not at issue in this interlocutor appeal, but the matters which were raised on the merits below raised three issues. The plaintiffs in this case claimed, first, that the agendas were wrong and that they were too inclusive. They listed too many specific items on them. Second, that there was no authority for the Pollution Control Board to conduct what they refer to as closed deliberative sessions. And third, that the Pollution Control Board was not allowing verbal comments at its meetings. And as is briefed extensively on the summary judgments below that we're still awaiting decisions on, the agendas in this case were in full compliance with the Open Meetings Act. There is an exception under, I believe, section C4 of the Open Meetings Act that applies for adjudicatory or quasi-adjudicatory bodies to consider matters, and that is the exception that the Pollution Control Board has cited in order to go into these closed deliberative sessions. And the language of the Open Meetings Act with regard to public comment does not say that members of the public must be allowed to stand up and verbally make comments at every meeting of every public body. What it talks about in the language is that they must be allowed to address the public body in accordance with the rules and procedures set forth by that body. And the Pollution Control Board does provide methods for the public and interested parties to address that body. If I could, Your Honors, the court in this case sent a notice to both of the parties asking that we, I'm sorry, did I address your question, Justice? The court in this case asked that the parties address the application of section 5 of the Environmental Protection Act in comparison to the Open Meetings Act and how those interrelate. And we have looked at that issue, and I'd like to address that briefly if I may. Go ahead. Okay. Section 5 of the Environmental Protection Act is the section that establishes the Pollution Control Board. It was part of the original enactment back in 1970. And it does everything from establish the Pollution Control Board to identify the number of members, qualifications, pay, et cetera. And there's language within that section which provides that all board meetings shall be open to the public and the public notice of all meetings shall be given at least 24 hours in advance of the meetings. And I believe from the court's question that the issue was how does that interrelate with the Open Meetings Act, and can the Open Meetings Act or can the Pollution Control Board take advantage of any of the exemptions that are set forth in the Open Meetings Act? And I believe it can, and the reason is that the language set forth in the Environmental Protection Statute is not unique to that statute. It's found throughout the Illinois Code in many contexts. It's found in the Municipal Code, in the County's Code, in the Township Code. It's found in many pension codes involving not only General Assembly members but members of the judiciary, state employees. It is a, as the trial court in this case commented when that issue was raised, a statement of philosophy that when they're creating this new body, this new body is a public body. It's subject to the requirement that your meetings be open. It should not be read to trump the Open Meetings Act, and the reason it should not be read to trump the Open Meetings Act is in the first place, if you were to read it exclusively and ignore the Open Meetings Act and not construe the two of them together, what you would be saying to the Pollution Control Board, this court has previously held is subject to the Open Meetings Act in the Freedom Oil versus PCB case. What you would be saying is that PCB can never go into closed session to talk about anything. Appointment of employees, discharge of employees, settlement of litigation. They can never have a closed meeting even if it was a matter of the General Assembly. Is that an issue in this appeal? It is not, Your Honor, and I believe that you can assume for purposes of this appeal, as the court did below, that there was a question asked for compliance with the Open Meetings Act. What are the issues in compliance here? The issues that were raised by the plaintiff in this case were, as I mentioned, the three points. First, that the agendas that are adopted by the Pollution Control Board, the claim is not that they are too general, such as saying all proper business, but they're too specific. Second, that the Pollution Control Board goes into these closed deliberative sessions, which they list on their annual calendar of meetings, and that they don't qualify under the exemption C-4 of the Open Meetings Act for that. And third, that they do not allow members of the public to stand up at meetings of the Pollution Control Board and verbally address the Pollution Control Board on these quasi-adjudicatory matters. What's going on at the second point? I'm not sure what's at issue there. What are they complaining about? I'm sorry, Your Honor. The second point about the matter of dispute. The closed deliberative sessions? Yes. When are they going into closed session and why? Excuse me? When are they going into closed session and why? The Pollution Control Board publishes on an annual basis a list of meetings. Some of those are what they refer to as closed deliberative sessions. And the exemption cited by the Board and by the Attorney General below is the exemption that allows a quasi-adjudicatory body to go into closed session to consider evidence and argument presented at a hearing. And they are following that for the quasi-adjudicatory docket that is part of what the Pollution Control Board's jurisdiction includes. Does this mean a session where just the Board members consult among themselves or are there hearing evidence or arguments from third parties? They are considering materials that have been submitted to the Board, specifically with regard to the property tax appeal process or the property tax application process. They are considering the matters that are submitted to the Board, which would include the application from my client or another applicant and the recommendation of the IEPA. And the Board members, I believe, are talking among themselves. Go ahead. With regard to the Court's question as to Section 5 of the Environmental Protection Act, I don't believe that the resolution of the interrelationship of that section with the Open Media Act is material to the resolution of this interlocutory appeal. It is something that will have to be decided on the merits because it is raised by the plaintiffs below. But I also believe, and I cannot speak for the State of Illinois because the State is not here, they are not appealing. However, I also believe that Section 5 of the EPA can be read in harmony with the Open Meetings Act as expressing the statement of philosophy that the PCB is a public body, like all of the other public bodies, that the same language in numerous statutes is used to create it. If this is such an oppressive order, why isn't the State here complaining about it? After all, you're just one of the people who wants to have a matter adjudicated by the Board. The Board apparently has got no problem. Otherwise, they'd be here saying, this is bad. I cannot speak, Your Honor, for the Attorney General as to why they should not appeal. Okay, if you can't speak for him, give me your best guess. My best guess would be that because the Attorney General serves a dual role, they are defending the claim below that is made a violation of the Open Meetings Act and the FOIA, and they also are required to comply with those statutes and essentially enforce those statutes. My best guess is that they are leaving the resolution of that question to the courts. Well, this is an interesting court in that we get a lot of litigation from the Attorney General who seems not to be the least bit shy to bring matters up here that they don't like on behalf of administrative agencies all the time. Pollution Control Board, if they felt aggrieved by this, and indeed the constitutional question you raised, separation of powers, exceeding court's authority, et cetera, we have no experience about their being hesitant to come here and complain loudly about it. And I can't, as I said, Your Honor, answer why we speak for the Attorney General, why they chose not to appeal. However, as Your Honor commented, we are one of the people that is restrained. We are the only person whose business is being restrained in that every other party that has pending applications for property tax relief, property tax assessment certification of these pollution control facilities can have their matters considered by the PCB under the exact same process that the plaintiffs in this case claim violate the Open Meetings Act. Of course, that's an interesting question as well. We don't know that that's the exact same process. Maybe WRB sought some kind of special way of handling this that the PCB agreed with whereas other people who are taking that property tax exemption matter before the board don't ask for it. Yeah, and there's absolutely nothing in the record to establish that, Your Honor. And there was nothing presented to the trial court that would say something like that. I'm just trying to understand, you know, why the dog didn't bark. Why are they not here? The reason that we are being singled out by the plaintiffs in this case, Your Honor, and we argue this below is because it's the plaintiffs that receive property tax revenues from our refinery and it is the plaintiffs who are complaining about the property tax pollution control certification process which they see as potentially diminishing the money that they're going to receive. They don't care that the Pollution Control Board, I would submit to Your Honors respectfully, is violating or not violating the Open Meetings Act. What they care about is stopping them from considering our applications and that's exactly what the circuit court in this case did and only our applications. Well, isn't that sort of an unfair criticism? Shouldn't your opponents have the right to say what they want to say about your application? Absolutely, and it's the requirement of the court, I believe, that if it's going to enter an injunction order under the authority of the Open Meetings Act to enter the order that the Open Meetings Act allows and that is to compel compliance with the Open Meetings Act. Not to stop the executive branch from considering the business of only one party even if the executive branch were to comply with everything that the plaintiffs say. In this case, Your Honors, we cited in our briefs the Lindsay v. Chicago School Board case which is very similar and it's the closest case that I think has been cited by either party as to the facts in this case and that was one where the Chicago School Board had a committee to consider the appointment of a new superintendent. There was an allegation that they didn't give sufficient notice of the meeting and the plaintiffs in that case, just as in this case, said in their complaint that what they asked the court to do was to enjoin the body, in this case the PCV, in that case the Chicago School Board, from considering or proceeding with the meeting or moving forward unless they complied with the Open Meetings Act. The court in this case, as the court in Lindsay recognized, went beyond that. What they said was not comply with the law, which would be in appropriate order. It said don't appoint anybody to the position of superintendent. Even if you follow the Open Meetings Act, until this case is over, don't appoint anybody to that position. And in this case, the court said don't consider one person's applications for certification. Only one person's. Even if you follow the Open Meetings Act, don't consider their applications. Okay, thank you, counsel. Your time is up. You have the opportunity to address this again in rebuttal. Thank you, your honor. Mr. Craven? May it please the court. Counsel. Counsel. Your honor. Let's start with the terms of the order that's at issue. On March 30th, Judge Schmidt held a hearing on this matter. And during the course of that hearing, he learned that on March 28th, there had been a closed deliberative session, there had been a closed meeting of the Pollution Control Board. We allege that at that meeting, the Pollution Control Board had deliberated the EPA recommendation on some of these 60 applications for $3 billion in property tax relief that are pending. They discussed those in closed session. We allege that that's a violation of the act. What does that mean, discuss it in closed session? Does that mean just among themselves? I assume it was among themselves, perhaps with staff. Judge Schmidt has the transcripts. They're not in this record. Go ahead. We weren't there. I don't believe the refinery was there. Of course, they had the refinery's application. They had the refinery's application. Which I assume made the arguments they wanted to make. Right. And they had the EPA recommendation, which we now know, according to the answer to the complaint that's filed, was deficient. EPA, in part, said everybody, you know, our technical and legal advisors approved this, and we now know that that's not true. But, so they're in March 30th, they're deliberating, March 28th, they're deliberating this. The pattern that we show by public documents is that one week is the closed deliberative session. The next week, they come out and approve, without discussion, an 18- to 20-page order approving these applications, these certifications. That next meeting was scheduled for April 5th, that next open meeting, where they would vote on these certifications that they had discussed in what we allege to be an illegal session on the 28th. The meeting after that was April 12th, where they planned to go into another closed session to deliberate, we allege, more of these applications. Judge Schmidt entered an order on the 30th that said, don't discuss those issues on the 5th or the 12th. Period. And then we're going to schedule another hearing, and we then went into the discussion of when that hearing would be. And his order specifically says, don't discuss this pending another hearing on the merits of this case. This order expired on April 25th, when we held a hearing on the merits of this case. The order that is appealed from does no more than stop a meeting on April 5th and stop a meeting on April 12th, as it relates to... So is this on loop? Very well could be. Well, wait a minute. No, very well could be. I'm not sure what that means. Either it's still, it's an order which has effect, or it doesn't. You seem to be saying to stop meetings on April 5th and 12th. That's come and gone. This court, you can't move the calendar back, Your Honor. So then, is there anything about the order now before us which has any current effect or potential future effect? That order was frozen in time. And I'd have to check the date. That order was frozen in time on the date that this notice of interlocutory appeal was filed. Judge Schmidt loses any jurisdiction to alter, amend, vacate anything to that order. And by its terms, it expired on April 25th. What he did on April 25th, or what he hasn't done since April 25th, is not before this court. And no order entered after April 25th, or on April 25th, has been appealed from. So what are we doing here? You're the appellee. Okay, that's maybe not a fair question, but give me your best shot. What are we doing here anyway? Well, if this court says that Judge Schmidt was wrong, you can't go back and reschedule the April 5th and April 12th hearings. You can't get in the Wayback Machine and go back to April and say, okay, go ahead and do it. And anything that he's ordered since April 25th is not before this court. We're talking about a window of time that hasn't left. Did you raise mootness in your brief? No. That's what I'm wondering. I thought, you know, maybe, because I've been on this job a long time, Mr. Craven, I think maybe it's entirely possible I missed certain things. And I thought maybe I missed that. I did not. We did not raise mootness in the brief. But you seem to be doing it now. I believe Your Honor asked me the question. I certainly did. Okay. But that's where we are. But it's a very narrow order. You heard the questions I asked Mr. Wilson. I'm curious, and leaving aside the mootness issue for a moment, it seemed to me that his biggest complaint was, or one of his biggest complaints was, this is an order, hey, just singling us out. And what if the order didn't single you out? You just said PCP don't violate the Open Meetings Act. This order was entered in the context of this litigation. We don't know that there are other applications pending from somebody besides Mr. Wilson's client. We don't know that they have tried to use Exemption C-4 on somebody else's application for a certification when there's been no evidence and there's been no hearing, and C-4 doesn't apply by its terms. Nobody else has raised the issue that the Pollution Control Board did not make a motion, did not have a roll call vote on that motion, which contained a citation to an exemption. Nobody else has raised the issue of the other violations of the Act that are detailed in the complaint. Mr. Judge Schmidt drafted an order as narrowly as he could to prevent further violations of the Act by the Pollution Control Board in the matters raised by this complaint, and he did so for a very short period of time. Could we solve Mr. Wilson's complaints by broadening the order to apply to everybody? Yes. You don't see any problem with that? Judge, I'm a lawyer who does open meetings work across the state, and if this court entered an order on everybody that said all public bodies have to comply with the Open Meetings Act at all times, I'm not sure how the Pollution Control Board should comply with the Open Meetings Act. So that makes you a happy guy. It makes me a happy guy, but for tuition payments. It makes me a happy guy. But in the context of this case, because part of our prayer for relief in this case is to set aside, under the authority of the Rice decision, to set aside those certifications that were issued, we believe, in a process that violates the Open Meetings Act. But that's not before us right now. That's not before you right now. But what Judge Schmitt saw when he's looking down this road, what he saw was the possibility of further violations on April 5th and April 12th that he would then be faced with the question of undoing things that he could have stopped from happening. So what he did, on a very short basis, was simply stop them. Why can't the Pollution Control Board members sit down in private and talk about the issue before them? Because the Pollution Control Board is subject to the terms of both the Environmental Protection Act, which has a blanket statement of all meetings shall be open, and at a minimum, they're subject to the requirements of the Open Meetings Act, which says all meetings shall be open with these exceptions. They haven't cited it. And before you can go into a closed session, you have to make a motion that cites an exemption that allows you to go into closed session. There has to be a roll call vote on that exemption. And then you can go into closed session. They didn't do any of those things. And even if they had, we don't think C4 applies. What about Justice Cook's point, same as mine, about they're really, in this context perhaps, an adjudicative body. Shouldn't they have the opportunity to discuss among themselves using this court as an example? I mean, I'd hate to think that we're sitting out there and talking about our conference in a given case with everyone here and the press present. I'd hate to have some of the views I've occasionally expressed in private go public because in the heat of day, or the light of day, maybe they don't sound too smart. That's why my colleagues have to correct me. The Open Meetings Act, leaving aside the Environmental Protection Act, as Judge Schmidt did because he didn't have to go there. Okay. The Open Meetings Act allows a quasi-adjudicative body to go into closed session with a motion and a roll call vote to discuss the evidence presented at a hearing. We have no evidence. We have a recommendation from EPA. There's no evidence. There's no hearing. Nobody's allowed to talk. But if they thought this was evidence, viewing it broadly, they'd have to at least have a vote that they want to do that under the Act so that they can discuss this among themselves. Yes. And none of that happened? And there has to be an agenda for that closed session. Prior to this litigation, they didn't post an agenda for their closed session. I asked Mr. Wilson why the state isn't here. I think we all know why the state isn't here. I asked his best guess. Give me yours. My best guess? Yes. They're in the position that their client has violated the Open Meetings Act. If you read the answer to the complaint, PCB takes a position and read the pleadings below, PCB takes a position that we believe we're in compliance with the Open Meetings Act. Yet they admit the very specific acts elicited in the complaint establishing that they violated the Act. The Attorney General is not here today because their client has violated the Act, and they know it. My best guess. On the issue, as Mr. Wilson noted, you did ask about 5-5 and the Environmental Protection Act. And I agree with Mr. Wilson that this Court set the framework for analyzing that question in the Freedom of Oil case. Freedom of Oil case, the question was, can the Pollution Control Board meet by telephone? Back in the days when telephone conferences were new. And the answer to the question from this Court was yes. Under both Section 5-5 of the Environmental Protection Act and under the Open Meetings Act, this Court considered them in separate paragraphs, in that opinion, and read those statutes together. And in this case, reading the Environmental Protection Act and the Open Meetings Act together, leads to the conclusion at the far end of openness, which is presumption and preferred. In 1957, when the General Assembly passed the Open Meetings Act, they, in the policy statements, find that the exceptions to the public rights to attend meetings exist only in those limited circumstances where the General Assembly has specifically determined that the public interest would be clearly endangered or the personal privacy or guaranteed rights of individuals would be clearly in danger of unwarranted invasion. Thirteen years later, the General Assembly passes the Environmental Protection Act, Section 5-5, that establishes the Pollution Control Board. In the legislative policy, and requires that all meetings shall be open, and the General Assembly finds in Section 5-2 of that Act that environmental damage seriously endangers the public health and welfare as more specifically described in later sections of this Act. Consistent with the philosophy of the Open Meetings Act, that in those situations where the public health and welfare is considered, meetings should be open. If you read the Acts together, the determination is that the meetings of the Pollution Control Board have been determined by the General Assembly, not this Court, but have been determined by the General Assembly to be open, without exemption. Even if you read the statute the way Mr. Wilson reads the statute, the Open Meetings Act applies, with its exemptions, to the Pollution Control Board, and they stand in violation of that statute. Mr. Craven, I'm looking at the order under appeal from here, and the order says, this Court brings preliminary injunction against the defendants of future violations of the Act ruling applies only to named plaintiffs and named defendants. The case is set for hearing on April 25. It doesn't say April 5 and April 12 is limited to that. It seems to be an open-ended order. The transcript, the order, I'm looking at the 51, the docket entry. Judge Schmidt made his order very clear in the proceeding. At page 56 of the transcript, he says, in granting an injunction against future violations of the Act, and the only way to do that is to say there are to be no more meetings concerning these plaintiffs and these defendants until we can get a resolution after a full hearing on the merits of this case in the very near future. Skipping a paragraph. So my order is this, so we're perfectly clear. If it concerns the named plaintiffs in this case, then the meeting of April 5 where they vote on the agenda and the closed deliberative session on April 12 are enjoined. They are not to occur until we can have a hearing on the merits. Well, it seems a little bit broader than you're suggesting. Namely, it seems like he's enjoined the meeting from the 5th and the 12th. And then he says no meetings are to occur until we have a hearing on the merits. I mean, doesn't that suggest that we're going beyond the 5th and the 12th? But, I mean, they're just enjoined for the foreseeable future? The meeting on the 5th and April the 12th are enjoined is what he very clearly says. But the last sentence, they are not to occur until we can have a hearing on the merits. They, the meeting on April the 5th and April the 12th. I forget my English structure words, but something about a predicate. Well, it's the antecedent of they is a little unclear, but it suggests to me at least that it's not the meetings on the 5th and 12th, it's meetings are not to occur. If he's enjoined the meetings, meetings on April 12th are enjoined, then what's the last sentence mean? I think the last sentence probably means further meetings are not to occur until we can have a hearing on the merits, and that's just reference back to the 5th and the 12th. Even reading it that broadly, the court may, this court may avoid a mootness argument, but the argument still, the argument Judge Smith is still restraining the Pollution Control Board from continuing the pattern of these closed deliberative sessions without an agenda and without a motion, followed by rote approval of orders a week later with no public discussion and no public deliberation. So what he's doing is, again, reducing the work that is going to have to be undone. So I just, I'm not sure I, based upon the language here, that this is a moot matter, and then it goes back to this question we asked Mr. Wilson. How about if we took this agenda or took the injunction and said, you know, where it said limited to the WRB refining, said, yeah, get rid of that limitation, just PCB, don't be violating the Open Meetings Act anymore. Do you have a problem with that? Well, no, so long as there's a comma. So long as there's a what? There's a comma. What he's doing in this case. A comma? Yes. Enforce, comply with the Open Meetings Act, comma, and. And what? In this case, Judge Smith. Wait, wait, what comes after the and? A requirement that, well, if moving forward, they comply with the Open Meetings Act. How about we just took the order as entered and deleted the limitation that talks about it applying to WRB? Just everything else stands. I don't think that necessarily faces all of the requirements, because we've already got a discussion in closed session on March 28th. If they come out and vote on their next meeting in full compliance with the Open Meetings Act, we still have the claim that they violated the act when they discussed this section of these applications. Well, we're already dealing with the order before us. It seems to me if the order before us is don't have a meeting on PCB, don't meet about the WRB refining company in do some violation of the act. My question is what about we just said don't meet in violation of the act? How is that adverse to your position? Because there's a continuing dispute between the plaintiffs in this case, who are also subject to the Open Meetings Act, by the way, and apparently the Pollution Control Board, who believes that they're, and Mr. Wilson, who today for the first time takes a position that the Pollution Control Board does comply with the Open Meetings Act. There's a dispute between the parties. But this dispute isn't before us today in this case, is it? But to say comply with the act in the context of this litigation doesn't do us any good when there's a dispute between the Pollution Control Board and these plaintiffs about what compliance is. What Judge Schmidt was trying to do was stop this dispute from escalating until he can determine exactly what the Pollution Control Board has to do to comply with the act. I assume my time is up. Thank you, Counsel. Thank you. Mr. Wilson? Very briefly, I don't believe this case is moot, Your Honor, because if you look and read the entire context of Judge Schmidt's comments at the conclusion of the hearing on March 30th, what he says is, after referencing Section 3 of the Open Meetings Act and entering an injunction, he says the only way to do that is to say there are to be no more meetings concerning these plaintiffs and these defendants until we get a resolution after a full hearing on the merits of this case in the very near future. No meetings concerning these plaintiffs and these defendants until a resolution of the case on the merits, which we argued over 100 days ago on the summary judgment motions down below. We are still subject to the injunction in that the Pollution Control Board cannot consider the applications we have submitted, but they can continue to do everything else that the plaintiffs in this case claim is a violation of the Open Meetings Act. Mr. Kerman spoke about the disagreement that apparently exists between the parties on the scope or application of the Open Meetings Act. None of that is before us for resolution in this case, is it? It's not, Your Honor. Is there another case down the line where this is going to come up? When Judge Schmitt makes a decision on the merits, and on that point, Your Honor, Mr. Craven made the comment that he believes the AG is not here because they think there was a violation. That's not what they told Judge Schmitt. They have filed an extensive summary judgment motion below pointing out specifically why there was no violation, and they also asked Judge Schmitt at the hearing that took place on April 25th on the summary judgment motions not only grant summary judgment to the State, but vacate the preliminary injunction. There was no discussion about whether he had authority to do that given the pending appeal, but the comment that he made was, no, we're going to leave it in place until I decide that this matter I've taken under advisement. They still can't hear our applications. They can violate the Act allegedly by the plaintiffs as to everything else they're doing, but not our applications. As a matter of the Lindsay case and the language of the Open Meetings Act, that was an error, and therefore we'd ask that the preliminary injunction entered in this case be vacated, the case be reversed and sent back. Okay. Thank you, counsel. Thank you. We'll take this moment in revising the resource for a few moments.